# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **ALICIA DEGAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 10-1387-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff is a young woman who seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) and disabled adult child's insurance benefits (CDB) on the record of her grandfather, under sections 202(d), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 402(d), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's evaluation of the medical opinions, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I. Background

Plaintiff applied for both CDB and SSI on September 19, 2007, and at the hearing amended her alleged disability onset date to September 3, 2003. (R. 8-9, 29, 115-24). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 8, 49-55, 62-78). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Linda L. Sybrant on March 15, 2010. (R. 8, 26). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 8, 26-48). On April 15, 2010, ALJ Sybrant issued her decision, in which she found that Plaintiff has a combination of severe and non-severe impairments including degenerative disc disease, obesity, mood disorder, borderline personality disorder, diabetes, history of asthma, polycystic ovarian syndrome, and hypothyroidism; but that these impairments do not meet or equal the severity of an impairment in the Listing of Impairments. (R. 19). She found Plaintiff's allegations of symptoms resulting from her impairments "not credible;" and that Plaintiff has the residual functional capacity (RFC) for a range of work at the light to sedentary exertional level, but limited to standing and walking no more than three hours total in an eight-hour workday, and with certain additional postural, environmental, and mental limitations. (R. 19-20). Based upon the RFC assessed, and Plaintiff's age, education, and lack of work experience, the ALJ determined that there are sedentary, unskilled jobs existing in significant numbers in the economy that Plaintiff can perform. (R. 20). Therefore, she found that Plaintiff is not disabled as defined in the Act, and denied her applications. Id.

Plaintiff sought, but was denied Appeals Council review of the ALJ's decision. (R. 1-4, 111-13).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988); see also Richardson v. Perales, 402 U.S. 389, 402 (1971) (deciding that reports by licensed physicians are

"substantial evidence" which may be accepted in a disability hearing).  The court may

"neither reweigh the evidence nor substitute [its] judgment for that of the agency."

Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of

Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v.

Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports

the Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has

a physical or mental impairment which prevents her from engaging in any substantial

gainful activity and which is expected to result in death or to last for a continuous period

of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that she is not only unable to perform her past relevant work, but cannot, considering her

age, education, and work experience, engage in any other substantial gainful work

existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

4

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional capacity (hereinafter RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the

burden shifts to the Commissioner to show jobs existing in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in evaluating the credibility of Plaintiff's allegations of symptoms, and in weighing the opinions of her treating physician and of the state agency physician and psychologist; and that, therefore, the RFC assessed is not supported by substantial evidence in the record.  The Commissioner argues that the ALJ properly evaluated Plaintiff's credibility and properly weighed the medical opinions, and that the RFC assessment is supported by substantial evidence in the record.  The court finds that remand is necessary because the ALJ erred in weighing the medical opinions.  Because a proper evaluation of the medical opinions will necessarily require a reevaluation of the credibility of Plaintiff's allegations, and a reassessment of Plaintiff's RFC, the court will not address Plaintiff's claims of error in determining credibility and in assessing RFC. Plaintiff may make her arguments regarding these alleged errors on remand.

## III.    Evaluation of the Medical Opinions

In her first allegation of error, Plaintiff claims the ALJ accorded "weight" to the opinions of the state agency physician and psychologist regarding physical and mental RFC, but did not specify the weight accorded to the opinions and did not explain why the RFC she assessed differed from the RFC's assessed by the state agency physician and psychologist.  Second, Plaintiff alleges that the ALJ erred "in summarily dismissing the opinion of the treating source without performing the requisite analysis."  (Pl. Br. 24).

She argues that the ALJ should have accorded "controlling weight" to the opinions of Dr. Sankoorikal, her treating physician, regarding Plaintiff's physical limitations; that the ALJ did not provide "specific, legitimate reasons" for discounting Dr. Sankoorikal's opinions; and that the ALJ failed to apply the regulatory factors from 20 C.F.R. §§ 404.1527(d), and 416.927(d) properly when weighing Dr. Sankoorikal's opinions.  (Pl. Br. 17-24) (quoting Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)).  The Commissioner argues that the ALJ properly accorded "little weight" to Dr. Sankoorikal's opinions and gave good reasons for discounting them.  (Comm'r Br. 21-23).  He argues that the ALJ properly evaluated the state agency physicians' opinions in accordance with Social Security Ruling (SSR) 96-6p.  Id. at 23-24.

## A.      Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings

123-24 (Supp. 2011).  A treating source[1] physician who has treated a patient frequently over an extended period of time is expected to have great insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  Nevertheless, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson, 366 F.3d at 1084; Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2010) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with the other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight she gives the treating source opinion. <u>Id.</u> 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, [s]he must then give 'specific, legitimate reasons' for doing so." <u>Id.</u> (citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

## <u>B.</u>    <u>The ALJ's Evaluation</u>

The ALJ considered and discussed the treating source medical opinions of Dr. Sankoorikal, and explained that she accorded them "little weight" because they are not consistent with the (1) diagnostic testing and (2) physical examinations of record; because they are not supported (3) by Plaintiff's sporadic medical treatment and (4) by Plaintiff's demonstrated level of functioning; and because (5) they render an opinion on the ultimate issue of disability which issue is reserved to the Commissioner. (R. 15). She considered the report of the consultative psychological evaluation prepared by Dr. Kovach and accorded "little weight" to Dr. Kovach's opinions because they are inconsistent with the totality of the evidence, and are not consistent with either the mental status examination findings or the Global Assessment of Functioning rating which were assessed by Dr. Kovach. (R. 17). Finally, the ALJ considered the functional capacity assessments made

by the state agency physician and psychologist, and "accorded them weight . . . because they are generally consistent with and supported by the findings, opinions, and conclusions of treating and medical sources contained in the record."  (R. 19).

### C.      Analysis

Plaintiff made her arguments regarding the various medical opinions out of order. The first question to be answered is whether the treating physician opinion is worthy of controlling weight.  Watkins, 350 F.3d at 1300.  Only if the treating physician's opinions are not worthy of controlling weight does it become necessary to consider all of the regulatory factors and to assess the relative weight which should be accorded to each medical opinion, including the opinions of the state agency physician and psychologist. 20 C.F.R. §§ 404.1527(d), 416.927(d) ("Unless we give a treating source's opinion controlling weight, . . . we consider all of the following factors in deciding the weight we give to any medical opinion.").  Moreover, even when all of the medical opinions are accorded relative weight pursuant to the regulatory factors, it is necessary to keep in mind that a treating source opinion is worthy of deference.  Watkins, 350 F.3d at 1300; see also Doyal, 331 F.3d at 763 (The opinions of other physicians are "not entitled to the sort of deferential treatment accorded to a treating physician's opinion.").

Here, the court is unable to discern whether the ALJ applied the correct legal standard to weigh all of the medical opinions.  The ALJ correctly cited the ruling and the regulations governing consideration of state agency consultant opinions, and considered

11

the medical opinions of the state agency physician and psychologist accordingly.  (R. 18-19) (citing SSR 96-6p, and 20 C.F.R. §§ 404.1513(c), 404.1527(f), 416.913(c), 416.927(f)).  However, the decision does not make it clear whether she specifically considered whether to accord controlling weight to Dr. Sankoorikal's opinions, and whether she subsequently applied all of the regulatory factors and properly assessed the relative weight which should be accorded to each medical opinion.  Moreover, the ALJ did not specifically  discuss or cite the rulings and regulations applicable to determine controlling weight or to determine the relative weight accorded medical opinions--SSR 96-2p, 96-8p; 20 C.F.R. §§ 404.1527(d)(1-6), 416.927(d)(1-6).

The ALJ briefly discussed her responsibility to weigh medical opinions:

> An Administrative Law Judge must weigh the credibility of respective physicians.  Additionally, although the uncontradicted opinion of a treating physician is entitled to substantial weight, that tenet is not without some limitations.  In weighing opinion evidence, the degree to which the opinion is supported by medical signs and findings is also considered (20 CFR §§ 404. 1527(d)(3) and 416.927(d)(3)).

(R. 15).

In the controlling weight inquiry, the regulations require consideration of (1) both a specific degree of support ("well-supported"), and a particular kind of support ("medically acceptable clinical and laboratory diagnostic techniques") for the treating source opinion; and (2) whether the treating source opinion is uncontradicted ("not inconsistent with the other substantial evidence in your case record").  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ's discussion quoted above does not include

12

the specific criteria of the controlling weight inquiry and cannot be viewed as a statement of the standard for evaluating controlling weight.

Moreover, the ALJ's discussion does not state the standard for relative weighing of medical opinions.  The regulations state the standard as:  "Unless we give a treating source's opinion controlling weight, . . . we consider all of the following factors in deciding the weight we give to any medical opinion."  20 C.F.R. §§ 404.1527(d), 416.927(d).  The Tenth Circuit has stated the standard as:  If the treating source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  The regulations provide five specific factors for weighing medical opinions, along with a sixth factor providing for consideration of other evidence brought to the ALJ's attention and tending to support or contradict the medical opinions.  20 C.F.R. §§ 404.1527(d)(1-6), 416.927(d)(1-6).  The ALJ's discussion addressed only two of the regulatory factors:  supportability by medical signs and laboratory findings, and consistency with the record as a whole.  (R. 15) (see 20 C.F.R. §§ 404.1927(d)(3, 4), 416.927(d)(3, 4).

The ALJ did not specifically state that the considerations enumerated in her discussion were the only factors she applied in weighing the medical opinions, and the court is aware of no requirement that an ALJ must state in her decision the legal standard upon which she relied to weigh the medical opinions.  Therefore, the court will not find

that the ALJ erred in stating the legal standard or that remand is necessary for the Commissioner to articulate a correct statement of the legal standard applicable here.  The real question is whether the ALJ properly determined not to afford controlling weight to Dr. Sankoorikal's opinions, and if so, whether the ALJ afforded proper relative weight to Dr. Sankoorikal's opinions, to Dr. Kovach's opinion, and to the opinions of the state agency physician and psychologist.

Although the ALJ did not specifically discuss whether Dr. Sankoorikal's opinions were worthy of controlling weight, and despite Plaintiff's argument to the contrary, substantial evidence supports the ALJ's implicit determination that the opinions are not worthy of controlling weight.  Plaintiff argues that Dr. Sankoorikal's opinions are well-supported, and cites to Dr. Sankoorikal's treatment notes and to Dr. Sankoorikal's reports to demonstrate that, in her view, Dr. Sankoorikal's opinions were consistent with those notes and those reports.  (Pl. Br. 18-19).  Next, Plaintiff asserts that "Dr. Sankoorikal's opinion is also consistent with the other medical evidence of record."  Id. at 19.  She then cites record evidence including diagnostic results and examination results which, in her view, are consistent with Dr. Sankoorikal's opinions.  Id. 19-21.  The fact that Plaintiff can point to substantial evidence in the record tending to support Dr. Sankoorikal's opinions addresses the controlling weight inquiry backwards.  The question in deciding whether controlling weight must be given is not whether substantial evidence can be found in the record which is consistent with the treating source opinions, but whether

there is substantial evidence in the record which is <u>inconsistent</u> with the treating source opinions.  If there is substantial evidence in the record inconsistent with the treating source opinions, those opinions are not worthy of controlling weight, and the ALJ must then weigh all of the medical opinions in accordance with the regulatory factors, affording proper deference to the treating source opinions.  In doing so she must explain the weight accorded to each medical opinion, and the reasons for that weight, recognizing that specific, legitimate reasons must be given to reject treating source opinions.  "When a treating physician's opinion[s] is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports 'to see if [they] "outweigh[]" the treating physician's report[s], not the other way around.'" <u>Goatcher</u>, 52 F.3d 289-90 (quoting <u>Reyes v. Bowen</u>, 845 F.2d 242, 245 (10th Cir. 1988)).

The threshold for denying controlling weight is low.  The <u>Watkins</u> court explained that for the second question of the controlling weight inquiry, the ALJ must determine whether "the [treating source] opinion is consistent with other substantial evidence in the record." <u>Watkins</u>, 350 F.3d at 1300 (citing SSR 96-2p).[2]  SSR 96-2p explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in

---

[2]Both the ruling and the regulations phrase the second step of the inquiry in the negative:  an opinion may be given controlling weight only if it is "<u>not inconsistent</u> with the other substantial evidence" in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (emphasis added); <u>and</u> SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 112 (Supp. 2011).

<u>Perales</u>, 402 U.S. 389.  SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2011).  As SSR 96-2p explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source] medical opinion."  <u>Id.</u>

In this case, Dr. Sankoorikal opined that Plaintiff is able to lift and/or carry a maximum of ten pounds either occasionally or frequently, is able to stand and/or walk thirty minutes continuously and two hours total in an eight-hour workday, and is able to sit thirty minutes continuously and two hours total in an eight-hour workday, and that her ability to push and/or pull is limited by lower back pain.  (R. 432).  Dr. Parsons, the state agency physician, opined that Plaintiff is able to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, is able to stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, is able to sit with normal breaks for a total of about six hours in an eight-hour workday, and her ability to push and/or pull is limited only by the exertional limits expressed in the lift and/or carry limitations.  (R. 390).  Dr. Parson's opinion is clearly evidence which is inconsistent with the treating source opinions of Dr. Sankoorikal.  Moreover, Dr. Parson cited medical evidence which lead him to provide such limitations as he did.  (R. 396).  Because Dr. Parson's opinion is such relevant evidence as a reasonable mind might accept to support a conclusion that is contrary to the treating source opinion of Dr. Sankoorikal, it is "substantial evidence"

16

precluding the award of controlling weight to Dr. Sankoorikal's opinions.  Therefore, it was not error for the ALJ to deny controlling weight to Dr. Sankoorikal's opinions.

Nevertheless, having correctly decided not to award controlling weight to Dr. Sankoorikal's opinions, it became necessary for the ALJ to evaluate and explain the relative weight accorded to each medical opinion in accordance with the standards discussed extensively above.  In that, the court finds the ALJ failed to fully explain her decision sufficient for judicial review.

The ALJ stated that she discounted Dr. Sankoorikal's opinions, in part, because they "are not consistent with the totality of the medical evidence, including the diagnostic testing and physical examinations of record."  (R. 15).  She discounted Dr. Kovach's opinions, in part, because "they are not consistent with the totality of the evidence as previously summarized."  (R. 17).  Finally, she accorded weight to the opinions of the state agency physician and psychologist "because they are generally consistent with and supported by the findings, opinions, and conclusions of treating and medical sources contained in the record."  (R. 19).  In each case, the ALJ alluded to her earlier summary of the evidence and asserted that the weight accorded each of the medical opinions was justified because that opinion was either inconsistent with or consistent with the totality of the medical evidence in the record.  Yet, in no case did she state specifically what it was in the record medical evidence which was consistent with or was inconsistent with each particular opinion.  Both Plaintiff in her brief, and the Commissioner in his response

point to record evidence which, in their respective views, support their respective arguments--that Dr. Sankoorikal's opinions should have been accorded greater weight than the opinions of the state agency physician and psychologist, or that the opinions of the state agency physician and psychologist should have been given greater weight than the opinions of Dr. Sankoorikal.  From this, the court gathers that there is at least some record evidence supporting either determination.  However, it is not for the court or for the parties' counsel to decide which is the "correct" determination.  It is the ALJ's responsibility to decide the weight accorded to each opinion, to explain why she reached that determination, and to support that determination with record evidence.  Then, it becomes the court's responsibility, if necessary, to decide whether the ALJ's determination is supported by substantial record evidence.  In this case the court, was left to speculate as to what record evidence supports the ALJ's determination.

Perhaps the ALJ's explanation in this case would have been sufficient if the record evidence pointed but one direction, or was so clear on its face that there could be no doubt of the reasons and the evidence relied upon by the ALJ.  However, that is not the case here.  Dr. Sankoorikal and Dr. Kovach based their opinions on personal examinations of Plaintiff and on the medical records which were available for their consideration.  The state agency physician and psychologist based their opinions on a review of the record evidence which was available to them in November 2007, and March 2008.  Medical evidence contained in Exhibits 13F, and 15F through 28F were not even

available for consideration by the state agency physician and psychologist.  In these circumstances, if the ALJ is to accept the opinions of the state agency physician and psychologist and discount the opinions of the treating and examining sources based upon the "totality of the evidence" or "the findings, opinions, and conclusions of treating and medical sources contained in the record," she must explain how she reached that conclusion, and cite specific evidence supporting her determination.  While it is the ALJ's responsibility to weigh the evidence and accord varying degrees of weight to each opinion, she must apply the proper standard, accord proper deference, and base her decision upon substantial record evidence.  Her determination must be based upon relative weighing of the evidence and must be supported by specific citation to the record. Although the ALJ's statement that the opinions of the state agency physician and psychologist are "generally consistent with and supported by the findings, opinions, and conclusions of treating and medical sources contained in the record" (R. 19) may be true for the findings, opinions, and conclusions of certain medical sources; it misses the fact that the opinions of the state agency physician and psychologist are inconsistent with the findings, opinions, and conclusions of Dr. Sankoorikal, a treating source.

Finally, the ALJ did not explain how she examined the state agency physician's or psychologist's reports and determined that they outweigh the treating physician's reports. Moreover, as Plaintiff argues, the ALJ's RFC is not completely consistent with either Dr. Sankoorikal's opinions or the opinions of the state agency physician or psychologist, yet

the ALJ did not explain why her RFC assessment is different from any of the medical opinions in the record.  In saying this, the court does not intend to imply that an ALJ must select limitations or restrictions that appear in particular somewhere in the record.  However, if she determines that Plaintiff's limitations lie somewhere between the limitations presented in the record, she must explain why she did not select the limitations opined by medical sources, and she must explain how and why she arrived at an intermediate position, and how the evidence supports that determination.

As explained above, the ALJ failed to adequately explain how she weighed the medical opinions.  The court is unable to ascertain the basis for the weight assigned, and is unable to determine whether substantial evidence supports the determination.  Remand is necessary for the Commissioner to properly weigh the medical opinions, and after doing so to properly determine the credibility of Plaintiff's allegations and to assess Plaintiff's RFC, taking into consideration the weight accorded to the medical opinions.

**IT IS THEREFORE ORDERED** that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this opinion.

Dated this 21st day of November 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

20